IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


ROBERT THOMAS MAYS, #245344,          :

     Plaintiff,                                  :

vs.                                                      :     CIVIL ACTION 10-00576-WS-B

WALTER MYERS, *et al.,*                      :

     Defendants.                              :


## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding <u>pro se</u> and <u>in forma pauperis</u>, filed a Complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted.

## I. Complaint. (Doc. 1).

Plaintiff Robert Thomas Mays names as Defendants Warden Walter Myers, Lieutenant James Dunn, and Sergeant Quentin Curry. Mays claims that these individuals violated his right of access to courts and right to due process. (Doc. 1 at 5-6). According

to Mays, on September 7, 2009, Defendant Curry confiscated from his person approximately sixty pages "of legal papers and copies" which Plaintiff needed in order to prove the claims in his pending Rule 32 petition. (Id. at 4, 8). As a result of this encounter, Plaintiff was charged with a disciplinary violation, namely, Conspiracy to Commit a Violation of Departmental or Institutional Rules. The disciplinary report submitted by Mays indicates that the following facts were offered to support the charge:

> On September 7, 2009 approximately 5:40 a.m., Quentin Curry, Correctional Sergeant gave Inmate Robert Mays W/M245344 a direct order to remove paper work from an envelope that inmate Mays had in his possession. Sgt. Curry confiscated (30) pages of copies of some of inmate Mays legal paper. Inmate Mays circumvented departmental/institutional procedures to have copies made.

(Id. at 4, 10). It appears that Defendant Curry's testimony at the hearing was the same as the facts contained in the disciplinary report (id. at 11), and that the hearing officer based his findings on Defendant Curry's sworn testimony. (Id. at 12). Mays was convicted of the charge and received a disciplinary sentence of fifteen days' loss of store, phone, and visitation privileges and fifteen days' of confinement in segregation, with no loss of good time. (Id. at 10-13). The disciplinary conviction was approved by Defendant Myers. (Id.).

According to Mays, at the hearing, Defendant Curry testified that "(inmates were) not to have property with copies made on [the] inmate alpha roster." (Id. at 4). Mays contends that "nothing was stated at the hearing that . . . substantiated the written violation or reason for the disciplinary action." (Id.). He further argues that the finding of guilt had no valid basis which would allow the confiscation of legal documents, and that the legal documents were not produced at the hearing. (Id.).

Mays alleges that he needed the confiscated documents "to show and prove the claims raised in his then pending Rule 32 post conviction action." (Id. at 8). According to Mays, his Rule 32 petition was subsequently dismissed without a hearing, and his appeal of the dismissal was also denied for lack of documentation, which was the same ground on which other state appellate courts relied to deny his. (Id.). Mays contends "[h]ad the legal papers been returned or not confiscated in the first place, the post conviction Rule 32 would not have been dismissed, and proper relief would've been ordered, and no injury would've resulted." (Id.). Mays maintains that these actions denied him the right of access to courts and thereby caused "substantial injury and loss to [him], including due process violations." (Id.).

Mays further asserts that "scrap paper" was handed out to inmates regularly for their use and that this paper consisted of used rosters, "store order forms, honor dorm rules and rosters for workers, worker logs, bed number wake-ups for chow, as well as inmate request slips." (Id.). Mays attached to the Complaint a copy of what he contends is Defendant Curry's response to Mays' various questions, including whether Defendant Curry knew that his act to "confiscate" an inmate's legal papers was a clear violation of constitutional rights and of federal law. According to Mays, Defendant Curry purportedly responded, "[Y]es, that is why I only took the alpha roster sheets that belong[] to the Alabama Department of Corrections, and gave inmate Mays what was not on an alpha roster back to Lieutenant James B. Dunn." (Id. at 14, no. 14). Defendant Curry also purportedly indicated that he took a manila envelope from the back of Mays' waistband and asked him what it was and what was in it. (Id. at 14, no. 7). Mays also submitted an inmate request slip, which he asserts was sent to Defendant Myers. In the request slip, Plaintiff argues that if inmates are not supposed to have any roster papers why does the prison print the inmate request slip on the back of inmate roster sheets. Mays appears to argue that the prison's use of the back of the inmate roster sheets for the inmate request slip renders his being

4

disciplined for using an inmate roster to make copies invalid. (Id. at 29).

Mays specifies that his claim against Defendant Myers is for approving his disciplinary conviction even though there was no evidence to support it and for failing to respond to his request slips seeking the return of his legal papers. (Id. at 5). Mays' claim against Defendant Dunn is for failing to return his original documents and for failing to respond to his request slips. (Id.). Mays' claims against Defendant Curry are based on the aforementioned actions allegedly undertaken by Defendant Curry in confiscating his legal papers. (Id).

For relief, Mays seeks to have the disciplinary removed from his records and to be awarded "for injury and damages for actual loss and punitive assessment as available and appropriate." (Id. at 7). Mays identifies the following as his "actual loss damages" for not receiving post-conviction relief: the $350 filing fee; more than $1 million in estate, annuities, and stock holdings willed to him; loss of income to the age of sixty-five, which is twenty-six years at $30,000 per year; Social Security from sixty-five years old to seventy-four years old, i.e., nine years at $2500 a month; and $1 million for each year that he has suffered from this malicious prosecution. (Id. at 9). Mays also requests punitive damages at a rate of two

times his "actual loss damages." (Id.). Mays does not mention a physical injury for which he seeks damages.

## II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Mays is proceeding *in forma pauperis*, the Court is reviewing the Complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2)(B).[1]   Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim is frivolous as a matter of law where, inter alia, the defendants are immune from suit, id. at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. Id.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). "A claim has

---

[1]The frivolity and the failure-to-state-a-claim analysis contained in Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), was unaltered when Congress enacted 28 U.S.C. § 1915(b)(2)(B) in 1996. Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001), cert. denied, 534 U.S. 1044 (2001). However, dismissal is now mandatory under § 1915(e)(2)(B). Bilal, 251 F.3d at 1348-49.

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 566 U.S. ___, ___, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (quotation marks and second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949.

When considering a pro se litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 593, 595-596, 30 L.Ed.2d 652 (1972). However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." GJR Investments v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Ashcroft v. Iqbal, supra; see Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (observing Iqbal's overruling of GJR Investments' heightened pleading standard). Furthermore, a pro se litigant "is subject to the relevant law and rules of court

including the Federal Rules of Civil Procedure." <u>Moon v.</u> <u>Newsome</u>, 863 F.2d 835, 837 (11th Cir.), <u>cert. denied</u>, 493 U.S. 863 (1989).

**III. Discussion.**

   **A. Disciplinary Claims.**

      **1. Absence of Liberty Interests.**

         **a. Confinement to Disciplinary Segregation.**

Mays is challenging his disciplinary for Conspiracy to Commit a Violation of Departmental or Institutional Rules, which did not result in the loss of good-time credits. (Doc. 1 at 4, 10). The sentence received by Mays for this disciplinary conviction was fifteen days' confinement to segregation and fifteen days' loss of phone, store, and visitation privileges. (<u>Id.</u> at 10).

In <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court addressed challenges to disciplinary proceedings. The Court held that an inmate is required to demonstrate a "grievous loss" in a disciplinary proceeding in order to establish a liberty interest and for due process to attach. In <u>Sandin</u>, <u>supra</u>, an inmate challenged his thirty-day segregation sentence based on a due process violation. The Supreme Court held there is no right inherent in the Due Process Clause for an inmate not to be placed in disciplinary segregation nor is there a state-created liberty

interest to be free from disciplinary segregation. Id. at 487, 115 S.Ct. at 2302. The Court concluded that no liberty interest was implicated by placement in disciplinary segregation; therefore, no due process was required. Id. The Court observed that this holding was a return to the due process principles of Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), which required an inmate to suffer a "grievous loss" before a liberty interest could be found. Sandin, 515 U.S. at 478-83, 115 S.Ct. at 2297-2300. The Sandin Court ruled that in the future, liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citations omitted), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 480, 484, 115 S.Ct. at 2298, 2300 (recognizing that good-time credits were a state-created liberty interest and their deprivation would be a "grievous loss"). The Court concluded that confinement to disciplinary segregation was not a dramatic departure from the ordinary conditions of incarceration, but was instead the type of discipline a prisoner should expect as an incident to his criminal sentence. The Court further found that the disciplinary

segregation "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 485-86, 115 S.Ct. at 2301.

In the present action, Mays' confinement to disciplinary segregation for fifteen days did not deprive him of a liberty interest inherent in the Constitution. Similarly, no state-created liberty interest can be found based on Mays' sparse allegations. Compare Williams v. Fountain, 77 F.3d 372, 374 n.3 (11th Cir. 1996) (finding that twelve months of solitary confinement represent[s] substantially more atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life, [and] we assume that [a prisoner suffering such] a liberty deprivation [is] entitled to due process), cert. denied, 519 U.S. 952 (1996), with Sandin, 515 U.S. at 475, 487, 115 S.Ct. at 2296, 2302 (finding a thirty-day disciplinary sentence did not violate the Constitution or impinge upon a state-created liberty interest); Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two months' confinement to administrative segregation was not a deprivation of a constitutionally protected liberty interest). Thus, Mays' segregation confinement did not deprive him of a constitutional liberty interest or a state-created liberty interest to which due process could attach.

**b. Loss of Phone, Store, and Visitation Privileges.**

Mays' fifteen days' loss of phone, store, and visitation privileges is not a liberty interest to which due process attaches. The Court finds the Constitution does not grant an inmate a right in visitation, store, and telephone privileges. See Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); Moore v. Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); Walker v. Loman, No. 2:06cv00896-WKW, 2006 WL 3327663, at *1, *3 (M.D. Ala. Nov. 15, 2006) (unpublished) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest). Moreover, Alabama courts have determined a prisoner does not have a state-created liberty interest in store, telephone, and visitation privileges. Dumas v. State, 675 So.2d 87, 88 (Ala. Crim. App. 1995).

An inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life. Sandin, 515 U.S. at 485, 115 S.Ct. at 2301. The further restriction of these privileges for a

11

short period of time is clearly a less severe punishment than confinement to disciplinary segregation. Such a restriction is not "atypical," nor is it a "significant hardship" under the Sandin analysis. It is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence. See Id. at 475, 485, 115 S.Ct. at 2296, 2301. Thus, Mays does not have a liberty interest in phone, store, and visitation privileges to which due process could attach.

**2. Lack of Evidence Claim.**

Mays also appears to argue that his disciplinary conviction for Conspiracy to Commit a Violation of Departmental or Institutional Rules was not supported by evidence at the disciplinary hearing. The Court construes this claim to be for a due process violation based on the alleged lack of evidence to support Mays' disciplinary conviction. Although Mays contends that there was no evidence or insufficient evidence to support his conviction, he has submitted a disciplinary report which reflects that there was evidence in the form of Defendant Curry's testimony. According to Mays, Defendant Curry testified that "(inmates were) not to have property with copies made on inmate alpha roster." (Doc. 1 at 4).

Although Plaintiff's allegations are scant on this claim, he has acceded that some of his copies were on paper containing institutional information on the other side. That is, Mays

asserts that this "scrap paper" is used by the inmates all of the time and the paper has varied information on it. As noted supra, Mays also submitted an inmate request slip that he states was printed on the back of an inmate roster, and he questions why he could receive disciplinary action for likewise using an inmate roster to make copies. (Id. at 29). Interestingly, Mays has not identified the purposes for which the inmates can use the scrap paper, i.e., he does not state that the inmates send this information out of the prison where it becomes a part of a public record.

In any event, because Mays does not have a liberty interest under the Constitution or created by state law not to be confined to disciplinary segregation and not to have his phone, store, and visitation privileges further restricted temporarily, due process does not attach; therefore, his claim for insufficiency of evidence fails. McKeithan v. Jones, 212 F. App'x 129, 130 (3d Cir. 2007) (unpublished) (finding that Sandin prohibited the court "from considering whether the misconduct decision was supported by 'some' evidence");[2] Hartley v. McNeil, No. 5:07cv101/RS-EMT, 2008 WL 1844416, at *3 (N.D. Fla. Apr. 23,

_____

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

2008) (because the plaintiff did not have a liberty interest under _Sandin_, _supra_, the protections offered by _Wolff_, _supra_, and _Hill_, _infra_, did not apply).

Assuming _arguendo_ that Mays was deprived of a liberty interest, such as the loss of good-time credits, the decision in _Superintendent, Mass. Corr. Inst. v. Hill_, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985), would be applicable to his argument that there was no evidence to support his disciplinary conviction. In order to satisfy due process, the _Hill_ decision requires a finding of "some evidence" in the disciplinary report to support a disciplinary conviction revoking good-time credits. _Id._ In the present action, the disciplinary report reflects that there was some evidence in the record to support the hearing officer's decision, namely, Defendant Curry's testimony. Thus, such a claim would fail even assuming Mays had established the existence of a liberty interest. _See_ _Black v. Warren_, 134 F.3d 732, 734 (5th Cir. 1998) (even though the plaintiff argued no evidence supported his disciplinary, the Fifth Circuit affirmed the district court's decision based on _Sandin_, and opined that "[e]ven if a constitutional liberty interest is implicated by Black's challenge to the disciplinary decision on the ground that no evidence supports the charge, the record reveals that 'some evidence' supports the charge.").

14

**B. Denial of Access to Courts.**

Mays further argues that he has been denied access to courts because his legal papers have been taken from him and not returned. This taking allegedly prevented him from filing documentation to support his Rule 32 proceeding which was pending at that time. According to Mays, his Rule 32 petition and the resulting appeal were dismissed for lack of supporting documentation, which is the same reason that he gives for his prior state court appellate proceedings being dismissed. Presently, Mays' petition for the writ of habeas corpus is pending in this Court, <u>Mays v. Davenport</u>, CA No. 10-00028-WS-B.[3]

A review of Mays' conclusory pleading of his denial of access to court claim reveals that he has failed to establish the required injury for stating such a claim. That is, to state such a claim, Mays is required to establish that he has been frustrated or impeded in the prosecution of his conviction's direct appeal, habeas petition, or collateral proceeding, or of a civil rights action implicating a violation of a basic constitutional right <u>and</u> that his underlying case was nonfrivolous. <u>Lewis v. Casey</u>, 518 U.S. 343, 353-54, 116 S.Ct.

---

[3] The Court takes judicial notice of its records. <u>Nguyen v. United States</u>, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009).

2174, 2181-82, 135 L.Ed.2d 606 (1996); see Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (interpreting Lewis's holding to include "direct or collateral appeals" of criminal convictions). To show that a claim is nonfrivolous, the underlying "claim must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Christopher v. Harbury, 536 U.S. 403, 416, 122 S.Ct. 2179, 2187, 153 L.Ed.2d 413 (2002). Mays' allegations do not provide information that permits this Court to conclude that his Rule 32 proceeding was nonfrivolous and that the unidentified documentation he was prevented from timely filing caused his Rule 32 petition to be dismissed.[4] Lewis, 518 U.S. at 351, 357, 116 S.Ct. at 2180, 2183 (requiring the inadequacy or deficiency be connected to the injury). Accordingly, Mays' claim for denial of access to courts fails to state a claim upon which relief can be granted. Moore v. Plaster, 266 F.3d 928, 933 (8th Cir.) (affirming the dismissal of access-to-courts claims because the plaintiff made no showing the dismissed underlying actions were nonfrivolous), cert. denied, 535 U.S. 1037 (2002).

---

[4] It is noteworthy that Mays does not describe the documentation that was taken and does not explain how it was different from the documentation that he had previously submitted to courts.

## C. Deprivation of Property Claim.

As noted supra, May alleges that Defendant Curry improperly seized his legal papers from him and that Defendant Dunn failed to return his legal papers. The Court interprets this claim as a deprivation of property claim. According to May, in questions propounded to Defendant Curry, Defendant Curry stated that he "only took the alpha roster sheets that belong[] to the Alabama Department of Corrections, and gave inmate Mays what was not on an alpha roster back to Lieutenant James B. Dunn." (Doc. 1 at 14, No. 14).

In Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the United States Supreme Court held that the deprivation of property by persons acting under color of state law does not constitute a deprivation without due process of law when a pre-deprivation hearing is impractical and there is available an adequate post-deprivation remedy at the time of the deprivation. Id. at 532-33, 104 S.Ct. at 3203-04. The Hudson Court reasoned that impracticality occurs when the loss of property occurs as a result of a "random, unauthorized act by a state employee," because it is impossible for the State to know beforehand of the deprivation, negligent or intentional, and to provide a pre-deprivation hearing prior to the loss. Id. at 532, 104 S.Ct. at 3203 (quoting Parratt v. Taylor, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), overruled

on other grounds Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).  Some post-deprivation remedies that have satisfied due process are administrative procedures, Parratt, 451 U.S. at 543-44, 101 S.Ct. at 1917, or ordinary tort litigation procedures, Hudson, 468 U.S. at 535-36, 104 S.Ct. at 3204.

In the present action, a pre-deprivation hearing would have been impractical as the alleged deprivation occurred as a result of a random act.  According to Mays, his legal papers were taken by Defendant Curry and then Defendant Curry turned those papers that were not on alpha rosters over to Defendant Dunn.

In Alabama, an adequate post-deprivation remedy exists for the alleged deprivation. Claims for property loss incurred at the hands of state agencies or their employees may be presented for compensation to the State Board of Adjustment pursuant to the Alabama Code §§ 41-9-60, et seq. (1991 and Supp.), or the state employee may be personally liable to the inmate in an ordinary tort action, Milton v. Espey, 356 So.2d 1201 (Ala. 1978); ALA.CODE § 6-5-262 (1993).  Therefore, Mays had available to him at the time of the deprivation a post-deprivation remedy that would have adequately compensated him for his loss.

It is not necessary that the post-deprivation remedy be available to Mays at the present time to determine whether the deprivation was with or without due process.  See Parratt, 451

18

U.S. at 543-44, 101 S.Ct. at 1917.  It is only required that an adequate post-deprivation remedy was available to Mays when the deprivation occurred.  Id.  Because a post-deprivation remedy was available to Mays at the time of his loss, the deprivation of his legal papers does not violate due process.  Accordingly, Mays has failed to state a claim upon which relief can be granted in regard to the deprivation of his legal papers.

**D.  Failure to Respond to Plaintiff's Requests.**

Mays alleges that Defendants Myers and Dunn "failed to respond [to]/address his multiple request slips about the return of the legal papers."  (Id. at 5).  Mays does not offer any other facts to clarify the nature of this claim; however, based on his allegations regarding Defendant Curry's purported responses to his questions, it appears that Defendants contended that Mays was not entitled to the legal papers which had been copied on inmate rosters.

As best the Court can discern, Mays appears to be arguing that Defendants Dunn and Myers acted improperly in failing to respond to his grievances requesting the return of his legal documents. However, the failure to respond to a grievance does not violate the Constitution.  Wallace v. Hamrick, 229 F. App'x 827, at **1 n.4 (11th Cir. 2007) (unpublished)("A prisoner is not entitled to grievance procedures under the Constitution."); Brown v. G.P. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994)

(ruling inmates do not have a constitutional right to a grievance procedure and therefore officials' failure to comply with the state's grievance procedure is not a constitutional violation); Greer v. DeRobertis, 568 F. Supp. 1370, 1375 (N.D. Ill. 1983) (same). Accordingly, Mays' allegations for failure to respond to his requests are frivolous.

**E. Application of 42 U.S.C. § 1997e(e).**

In the alternative, 42 U.S.C. § 1997e(e) is applicable to Mays' claims requesting damages, but not to his claim requesting the removal of the disciplinary conviction from his file. Section 1997e(e), which is entitled "Limitation on recovery," provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C § 1997e(e). This section prevents the recovery of compensatory and punitive damages by an inmate when no physical injury is alleged. Al-Amin v. Smith, 637 F.3d 1192 (11th Cir. 2011). In the present action, Mays has requested compensatory ("actual loss damages") and punitive damages. Because Mays did not suffer a physical injury connected to his claims for compensatory and punitive damages, those claims are without merit and are subject to

dismissal under 42 U.S.C. § 1997e(e) for failure to state a claim upon which relief can be granted.[5]

## IV. Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this **7th** day of **June, 2011.**

        **/s/Sonja F. Bivins**     _
        **UNITED STATES MAGISTRATE JUDGE**

---

[5] Because Mays' request to have his disciplinary conviction removed from his file is not a damages request, the Court's earlier recommendation on his disciplinary claims, supra, is dispositive of his request for removal of his disciplinary conviction from his file.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[6] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.

---

[6]Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed.R.Civ.P. 72(b)(2).

> Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.** Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded).** Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this **7th** day of **June, 2011.**

      **/s/Sonja F. Bivins**_
      **UNITED STATES MAGISTRATE JUDGE**